UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M.,<br><br>    Plaintiff,<br><br>v.<br><br>SSA (INTERESTED PARTY / NEF), et al.,<br><br>    Defendants. | Case No. 23-cv-03892-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 23 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II[1] benefits on February 26, 2016. (Administrative Record ("AR") at 230.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 139, 165.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ held on March 30, 2018. (AR 78.) Following the hearing, the ALJ denied Plaintiff's application on June 21, 2018. (AR 48.) Plaintiff requested review of the ALJ's

---

[1] Plaintiff asserts that she also applied for Title XVI benefits. (Pl.'s Mot. at 7, Dkt. No. 17; Pl.'s Reply at 3, Dkt. No. 24.) As explained below, the Court finds that Plaintiff has provided no evidence that she has a pending application for Title XVI benefits.

decision, and the Appeals Council denied Plaintiff's request on June 12, 2019.  (AR 1.)  Plaintiff sought judicial review, after which the Commissioner agreed to a voluntary remand.  (AR 793-94.)

The ALJ held a post-remand hearing on February 16, 2023.  (AR 678.)  Following the hearing, the ALJ again denied Plaintiff's application on June 2, 2023.  (AR 668.)  Plaintiff commenced the instant action for judicial review on August 3, 2023.  (Dkt. No. 1.)  On December 1, 2023, Plaintiff filed her motion for summary judgment.  (Pl.'s Mot., Dkt. No. 17.)  On February 12, 2024, Defendant filed its opposition and cross-motion for summary judgment.  (Def.'s Opp'n, Dkt. No. 23.)  On February 26, 2024, Plaintiff filed her reply.  (Pl.'s Reply, Dkt. No. 24.)

## II.     LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment

2

under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f).  RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's failure to consider her Title XVI application, (2) the ALJ erred as to Plaintiff's date of last insured, (3) the ALJ's failure to consider records after the date of last insured, (4) the ALJ improperly rejected Plaintiff's symptom testimony, (5) the ALJ failed to apply the proper age criteria in the medical vocational profiles, (6) the ALJ failed to adequately weigh Dr. Dickey's opinion, and (7) the ALJ failed to adequately address Plaintiff's mental limitations.

#### A.    Title XVI Application

Plaintiff asserts that the ALJ failed to consider her Title XVI application, thus resulting in an unreviewable record.  (Pl.'s Mot. at 7, 8.)  In support, Plaintiff cites to AR 230, which is the "Application Summary for Disability Insurance Benefits."  There is, however, no indication that Plaintiff applied for Title XVI benefits; instead, this page states: "I apply for a period of disability and/or all insurance benefits for which I am eligible under Title II and Part A of Title XVIII of the Social Security Act, as presently amended." (AR 230.)  A text search of the administrative record also leads to no results that Plaintiff applied for Title XVI benefits.  The Court finds no error as to

3

1 the ALJ's alleged failure to consider Plaintiff's Title XVI benefits.

### B. Date of Last Insured

Plaintiff asserts that the ALJ incorrectly found her date of last insured was in 2017, not 2019. (Pl.'s Mot. at 7.) In support, Plaintiff cites to her income in 2014 ($23,977.48) and 2015 ($4,622.36). (*Id.*) As Plaintiff acknowledged at the 2023 hearing and in her brief, however, this appears to be back pay. (*Id.* at 7-8, AR 725-26 ("A: There were no hours worked, that was just, I think that was cost of living or something that they owed.").) Plaintiff does not dispute that based on Plaintiff's Certified Earnings Record, her last quarter of coverage was the last quarter of 2012, such that she would be insured for an additional 20 quarters (*i.e.*, until the end of December 2017). (AR 954-55.) Instead, Plaintiff appears to assert that "unless she was paid twice for the same period," she is entitled to credit for 2014 and 2015 even if she did not work during that time. (Pl.'s Mot. at 8.) Plaintiff cites no authority for this proposition. The Court finds no error as to the ALJ's finding that Plaintiff's date of last insured was in 2017.

### C. Records After Date of Last Insured

Plaintiff asserts that the ALJ improperly omitted records that were dated after Plaintiff's date of last insured. (Pl.'s Mot. at 8-11.) In general, medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

As an initial matter, Plaintiff cites almost 500 pages of records from December 2017 on, and asserts in a conclusory manner that "[r]easonably these records are retrospective because they concern [Plaintiff's] initial condition when she applied." (Pl.'s Mot. at 9 (citing AR 1023-1526).) Plaintiff does not explain how the vast majority of these records pertain to a pre-expiration condition. For example, Plaintiff argues that the ALJ discredited her allegations of foot pain, and that "[i]f the ALJ had reviewed the recent medical records she would have been able to make a determination that was appropriate." (Pl.'s Mot. at 11.) Plaintiff includes no analysis or citation to the record in support of her argument, and it is not the Court's role to comb through hundreds of pages and independently determine if certain records should have been considered.

As to the specific opinions that Plaintiff asserts are relevant to Plaintiff's pre-expiration

condition, Plaintiff appears to assert that they show the progression of Plaintiff's impairments. (Pl.'s Mot. at 10.) In March 2012, Dr. Kimberly Hicks noted that Plaintiff had dizziness that comes and goes. (AR 427.) In February 2019, Plaintiff was diagnosed with severe mitral valve regurgitation. (AR 1134.) In September 2022, Dr. Jan V. Dickey noted that Plaintiff had cardiomyopathy. (AR 1527-28.) Plaintiff posits that the mitral valve regurgitation may have caused the earlier dizziness,[2] but fails to explain how the failure to pinpoint the specific cause of the dizziness affects her capacity in 2012 or during the relevant time period.

Plaintiff also points to Dr. Dickey's September 2022 mental impairment questionnaire, which found Plaintiff had delusions and hallucinations, depression, and difficulty thinking, and that Plaintiff was easily fatigued and frequently distracted. (AR 1530.) Dr. Dickey also found that Plaintiff's impairments would cause her to be absent more than four days per month. (AR 1534.) Plaintiff, however, again fails to provide any explanation for how Dr. Dickey's opinions as to Plaintiff's capacities in September 2022 are retrospective to Plaintiff's capacity to work in *2017*. The Court finds no error as to the consideration of post-2017 records.

### D. Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for disregarding her symptom testimony. In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff's argument in support of this alleged error is confusing. Plaintiff quotes the ALJ's opinion finding Plaintiff's symptom testimony to not be "entirely consistent with the medical evidence and other evidence in the record," as well as the following paragraph stating that Plaintiff's "records document a history of left foot pain, due to a work injury, where her foot [was] not fractured but was crushed by a forklift in 1993." (Pl.'s Mot. at 12 (quoting AR 662.) Plaintiff then complains: "The ALJ's reason to discredit [Plaintiff] are vague. It appears she believes that

---

[2] Plaintiff attributes this theory to her doctors, citing to AR 1447, but this page does not appear to make any connection between Plaintiff's mitral regurgitations and her dizziness in 2012. Rather, this record states that her mitral regurgitations started in July 2019.

5

because only one foot is crushed [sic].  Light work requires being on one's feet six hours a day. The ALJ has not cited to records to support her findings." (Pl.'s Mot. at 12.)  In other words, Plaintiff appears to believe that the ALJ's rationale for rejecting Plaintiff's symptom testimony is confined to the paragraph that immediately follows the ALJ's opinion.  This is not the law. Plaintiff identifies no other error as to the rejection of her symptom testimony.

In contrast, the ALJ explained that Plaintiff testified that she had depression and anxiety, and that she is forgetful and distracted.  (AR 662.)  The ALJ, however, pointed to Plaintiff's testimony that she watched forensic science shows, plays computer games, and plays poker, and explained that such testimony showed she could pay attention and maintain her concentration. (AR 660.)  Likewise, Plaintiff was able to take her husband to appointments and help with meals, contradicting claims of poor focus.  (AR 666.)  "Daily activities can form the basis of an adverse credibility finding where the claimant's activities [] contradict her other testimony[.]" *Sabin v. Astrue*, 337 Fed Appx. 617, 620 (9th Cir. 2009) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).  The ALJ also explained that Plaintiff reported mood swings, which was contradicted by Dr. Dickey's report that she generally did not have mood swings.  (AR 660.)  The Court finds no error in the rejection of Plaintiff's symptom testimony.

### E. Proper Age Criteria

Plaintiff argues that the ALJ applied the incorrect age, using Plaintiff's age at the time of the date last insured (age 51) instead of at the time of the ALJ's decision (age 56). (Pl.'s Mot. at 12-13.)  Defendant, however, points to Social Security Ruling 83-10, which states in relevant part:

> Under title II, a period of disability cannot begin after a worker's disability insured status has expired. When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. In these situations, the person's age at the time of decisionmaking is immaterial.

1983 SSR LEXIS 30, at *1; Def.'s Opp'n at 7.  Plaintiff does not explain why Social Security Ruling 83-10 does not apply in her reply; indeed, Plaintiff does not address the issue of her age at all in the reply.

Defendant also appears to argue that in any case, any error was harmless.  (Def.'s Opp'n at

6

7.) Here, Plaintiff argues that this error was not harmless because at 57 years of age, she would have been entitled to the "advanced age" category in the medical vocational profiles. (Pl.'s Mot. at 13.) Defendant, however, points out that the ALJ did not rely on the medical vocational profiles in determining whether Plaintiff was disabled. (Def.'s Opp'n at 7.) Instead, the ALJ relied on the testimony of a vocational expert because the RF included both exertional and non-exertional limitations. (AR 667; *see Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) ("When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations . . . , the grids are inapplicable and the ALJ must take the testimony of a VE.").) The Court finds no error as to Plaintiff's age.

### F. Dr. Dickey

Plaintiff argues that the ALJ "fail[ed] to address Dr. Dickey's physical functional evaluation. (Pl.'s Mot. at 17.) In January 2016, Dr. Dickey opined that Plaintiff could not walk for more than two hours, and that she could not walk more than three blocks without rest or severe pain. (Pl.'s Mot. at 17 (citing AR 456-57).)

The ALJ, however, **did** specifically consider Dr. Dickey's January 2016 evaluation, but gave it little weight. (AR 664.) The ALJ specifically cited to Dr. Dickey's opinion regarding Plaintiff's walking abilities, but found that these limitations were inconsistent with other medical evidence, including Dr. Dickey's own observations that she was able to ambulate to the exam room without assistance and sit without difficulty or pain. (AR 664.) The ALJ also noted the lack of abnormalities in the November 2014 musculoskeletal examination, as well as the normal findings of the January and March 2017 spine examinations. (AR 664.) The ALJ further noted that Dr. Dickey later reported that Plaintiff's chronic pain in the back and feet was stable and moderate in March 2017, that her gait was normal in August 2017, and that her chronic pain was static and moderate in October 2017. (AR 664.) Again, Plaintiff *only* argues that the ALJ failed to address Dr. Dickey's opinion; she does not argue that the ALJ failed to "provide specific, legitimate reasons based on substantial evidence in the record" in rejecting Dr. Dickey's opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Court finds no error as to the ALJ's evaluation of Dr. Dickey's opinion.

### G. Mental Limitations

Finally, Plaintiff argues that the ALJ failed to address Plaintiff's mental limitations. (Pl.'s Mot. at 18.) The basis of Plaintiff's argument is unclear. Plaintiff relies on general policy that an ALJ consider the severity of mental impairments before jumping to the weight given to physician opinions, the general rule regarding self-reporting mental illness, a complaint about the ALJ's findings of improvement, and finally a mention of a report completed by Plaintiff's son.[3] (Pl.'s Mot. at 18-20.) In all of this argument, Plaintiff never cites to the ALJ's findings regarding Plaintiff's mental illness. Defendant, in turn, posits that this argument concerns the ALJ's evaluation of Plaintiff's mental impairments at step two. (Def.'s Opp'n at 15.) Plaintiff does not dispute Defendant's supposition in her reply, nor does she address this issue at all.

The Court cannot discern any error in the ALJ's ruling. At step two, the ALJ considered the paragraph B criteria, *i.e.*, whether the mental impairment results in an extreme limitation or two marked limitations in a broad area of functioning. (AR 659.) The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information. (AR 660.) While the ALJ acknowledged that Plaintiff displayed issues with delayed memory and simple calculations in September 2016, the ALJ found this appeared to be a one-time aberration, pointing to her normal results in a 2017 mental examination and her daily activities, which included managing money and handling a savings account. (AR 660.) Next, the ALJ found that Plaintiff had a mild limitation in interacting with others based on various doctors observing that she was cooperative and interacted appropriately with office staff, as well as her and her husband's reports that they went out and socialized with others. (AR 660.) The ALJ then found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace based on her husband's reports that she took care of him by taking him to appointments, helping with meals, doing laundry, washing dishes, and cleaning the bathroom, as well as Plaintiff's reports that she watches Forensic files, plays computer games, and plays poker. (AR 660.) Finally, the ALJ found that Plaintiff had a mild limitation in adapting or managing herself, as she reported performing her

---

[3] Plaintiff then cites to a report by Plaintiff's husband, so it is unclear if there is a report by Plaintiff's son or what it states. (Pl.'s Mot. at 20 (citing AR 286-87).)

own self-care while various doctors found her grooming and hygiene to be adequate. (AR 660.)

The ALJ also considered Dr. Dickey's report regarding Plaintiff's mental impairments, and found that his January 2018 conclusion that Plaintiff was limited but satisfactory in dealing with normal workplace stress was consistent with Dr. Dickey's observations that Plaintiff was cooperative, well oriented in multiple domains, had good insight and judgment, and had intact memory. (AR 664.) The ALJ also explained the rejection of Dr. Dickey's finding that Plaintiff would miss more than four days of work each month, explaining they were not consistent with Dr. Dickey's mental status observations and treatment notes, including his observations that she was coping with stress, caring for her partner, and had improved mood stability over time, as well as her reports of her daily activities. (AR 664-65.) The ALJ also considered reports by Plaintiff's husband that she was forgetful and had poor focus, but found that this was contradicted by Plaintiff taking care of him and her daily activities. (AR 665.)

Taken together, the Court finds that Plaintiff has failed to identify an error in the ALJ's findings as to her mental limitations.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: September 23, 2024

KANDIS A. WESTMORE
United States Magistrate Judge